[Civ. No. 19515. Second Dist., Div. One. Oct. 8, 1953.]

CLYDE G. RICE, Appellant, v. JACK A. BROWN, Respondent.

Arthur L. Ball and Chester C. Kempley for Appellant.

Harry William Elliott and Staples & Meifert for Respondent.

SCOTT (Robert H.), J. pro tem.—Plaintiff appeals from an adverse judgment in an action for money brought by him against his employer. A judgment favorable to plaintiff fol-

lowing an earlier trial of the same case before another judge was reversed on appeal (104 Cal.App.2d 100 [231 P.2d 65]). This resulted in the second trial concerning the outcome of which plaintiff now expresses his dissatisfaction.

The complaint named two defendants, Jack A. Brown and his son, William A. Brown. The latter was a nominal defendant and from the adverse judgment as to him plaintiff has taken no appeal. We shall refer to defendant (respondent) Jack A. Brown merely as defendant.

It was stipulated at the trial that the relationship of plaintiff and defendant was that of employee-employer. Defendant was a plastering contractor. He employed plaintiff, an experienced estimator, to make estimates on prospective plastering jobs and to assist in procuring contracts. Payment for such services was to be a percentage of the profits.

Upon the trial of the case plaintiff established a prima facie right to an accounting. Thereupon the trial proceeded on the issue of defendant's affirmative defense that there had been a new oral agreement which was referred to as an account stated between the parties.

Under the original agreement of the parties plaintiff's compensation was to be calculated as follows: From the profit on a job defendant was to deduct and retain 2 per cent of the gross cost, plus $100 per week, plus 50 per cent of the balance; plaintiff was to receive the other 50 per cent of the balance. Plaintiff's share was later reduced to 33⅓ per cent of the balance, at a time when he agreed that defendant could put his son, William A. Brown, to work and that the balance of the profits would be divided equally among the three of them.

On July 1, 1946, defendant notified plaintiff and William A. Brown that their employment would end August 1, 1946. At the trial he testified that about the time that he so notified them, "I told them that I would finish the contracts, all that we had on the books, and they would participate in their share of the ones that were under construction, that is, the plastering was started, but on the ones that had not been started they would not participate." To this statement he testified that plaintiff replied, "All right." He also testified that at a conference on July 31st, substantially the same conversation took place, to the effect that plaintiff would not be paid for jobs on which work had not then been commenced.

Plaintiff contends that the original agreement between the parties provided that the percentage of profit to be paid

plaintiff should be calculated on all contracts estimated or secured by him. He urges that defendant had no right to state that plaintiff's share would be limited to contracts on which work had been started before August 1, 1946.

The trial court found that the original agreement of the parties was that this percentage of profits to be paid plaintiff was "from the operations of the entire plastering-contracting business." It further found as follows:

"3. The Court further finds that on the first of July, 1946, Jack A. Brown notified the plaintiff and William A. Brown that their employment on a profit sharing or participating basis as hereinbefore found by this Court, would terminate on August 1, 1946. On July 1, 1946, Jack A. Brown further stated that he would finish to completion all contracts then on hand, all of which were in the name of Jack A. Brown; and further stated to plaintiff and to William A. Brown that upon the termination of their employment, they would participate or share, under the terms of their employment, in the profits resulting from all of the contracts on which any work had been performed in proportion to the performance of the contracts on which work had been commenced at the time of the termination of their employment. Jack A. Brown further stated that he would call in an outside auditor and have his books audited to determine the amount of the profit in the aggregate in which plaintiff and William A. Brown would be entitled to participate under their arrangement with him; that he would submit a statement of such auditor to the plaintiff and William A. Brown, and would give them and each of them a supplemental report and account from time to time showing the progress of completion of each of the contracts in the profits of which they would be entitled to participate, and the amount of profits accruing under each of said contracts. The plaintiff and William A. Brown made no objections to such proposed method of accounting and division of the profits, and acquiesced therein."

The trial court further found that the parties agreed as to such contracts on which plaintiff's earnings were to be figured, that the books of defendant Jack A. Brown were audited, the payments due plaintiff were ascertained, were made to plaintiff and were accepted by him as they accrued, and that $10,500 had been paid to plaintiff. It further found that $882.76 was still due him and that defendant had already deposited that amount of $882.76 with the court. The trial court concluded that the conduct of the respective parties

resulted in an account being stated between them and gave judgment for plaintiff for the amount deposited with the court.

In his opening brief plaintiff makes the following statement:

"The findings of fact, if the evidentiary matter is sifted down to ultimate facts, and if all conflicting evidence is disregarded and the evidence is construed most favorably to Respondent, contain ultimate facts which find support in the evidence." He contends that the findings are not sufficient to support the judgment.

From evidence adduced at the trial, the court was justified in finding that there was an oral agreement between the parties entered into about July 1, 1946, which had the effect of settling a difference of opinion that existed between them as to the basis upon which plaintiff was to receive further money from defendant. There was evidence of a serious disagreement between them based upon asserted business conduct on the part of plaintiff which, in the opinion of defendant, was inconsistent with continuing service by plaintiff under their original agreement. It was to plaintiff's financial interest to have defendant go forward with contracts already commenced which the latter agreed to do although he stated that he was operating under a severe mental and physical strain. Defendant went ahead with his part of the agreement and had audits made, records kept and payments forwarded to plaintiff. There was testimony that from August 1, 1946, to December, 1947, these payments were thus forwarded to and accepted by plaintiff without any notice by him to defendant that he was making a claim for any sums beyond those which would accrue under the agreement entered into in July, 1946. During this period of time plaintiff was doing nothing in the operation of the business or securing new contracts which would enable defendant to continue to carry on his business in the future, because his employment had been terminated. It was not until he had received substantially all of the benefits under his agreement of July, 1946, that he undertook to repudiate it and to seek additional money. The evidence discloses that he knew the effect of the new agreement. He knew that work under other contracts had been started without any payment to him of any percentage of profits. He complained in private conversations with a bookkeeper of defendant, but what he said was not told to defendant.

There was evidence that plaintiff avoided any statement to defendant which in any way would be a repudiation of the agreement under which he was receiving substantial payments. We are unable to say that the implied finding of the trial court that there was sufficient consideration to support the agreement of July, 1946, is without evidentiary basis. Plaintiff was free to reject defendant's offer of the new agreement but he chose to accept it and having done so, is bound by its terms.

"The law will not weigh the quantum of consideration, and so long as it is something of real value in the eye of the law it is sufficient. . . . The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced." (17 C.J.S. p. 474, § 127.)

We have considered the cases cited by plaintiff, dealing with questions raised by him in this appeal and declaring principles of law which are well settled as to the right of a salesman to his commission, and the essential characteristics of an account stated. We find no law which precludes parties from freely entering into an agreement as the trial court found they did in this case, even though their words and acts were such that they did not fit with precision into only one legal category.

Judgment affirmed.

White, P. J., and Doran, J., concurred.